Peter M. Daly, J.
On a motion by an ancillary committee to settle the final account of his proceedings in this State, the Department of Mental Hygiene has submitted a claim for care and maintenance of the incompetent at the Hudson River State Hospital for the period from June 21, 1957 through August 2, 1958 in the amount of $1,708.
The right of the department to recover any sum at all from the incompetent’s estate, under the circumstances herein, is challenged by the committee and by the special guardian appointed by the court to protect the rights and interests of the incompetent in this proceeding.
The committee was appointed by an order of this court dated May 21, 1956 while the incompetent was a resident of the State of New Jersey where a guardian had theretofore been appointed. He owned certain real property in this State necessitating the appointment of a committee for the purpose of selling the same.
*531 It is alleged that the incompetent, while driving a car in Westchester County on May 24,1954 was involved in an accident as a result of which an indictment was returned by a Grand Jury in Westchester County; that on July 30,1954, while under indictment, he was committed to the Matteawan State Hospital, remaining at that institution until June 21, 1957 when he was transferred, without the knowledge, consent or approval of the committee, to the Hudson River State Hospital. The indictment against him was dismissed on July 15, 1958. No claim is made for care and maintenance of the incompetent at the Matteawan State Hospital.
Section 79 of the Mental Hygiene Law provides that “ The maintenance, care and treatment of any patient of a state institution, other than Matteawan State Hospital or Dannemora State Hospital, admitted thereto upon a court order arising out of a criminal action * * * shall be paid by the county from which such patient was admitted.”
The Attorney-General contends that under this section the county is liable only where the patient is directly admitted to a State hospital and not where he is admitted by a transfer from Matteawan State Hospital or Dannemora State Hospital, and that in a situation such as is involved herein, the county is not liable for his care and maintenance. He cites, in support of this, an opinion by his predecessor in office. (1945 Atty. Gen. 243.)
The special guardian and committee contend that the liability of the county under section 79 cannot be avoided because admission was by transfer, such as was effected herein. The special guardian argues further that if in accordance with the contention of the Attorney-General the county is not liable, it does not necessarily follow that the incompetent’s estate is liable, but on the other hand the State itself may be liable.
After an examination and analysis of the pertinent statutes the court concurs in the reasoning of the Attorney-General and will hold that the maintenance of the incompetent would be a county charge only in the event of a direct admission to a State hospital and not where admission was the result of a transfer.
There was properly no charge for maintenance as long as the incompetent was a patient at Matteawan State Hospital, nor would there be a charge against the incompetent after a direct admission to a State hospital in the first instance. But there is no logical reason under the circumstances herein for not holding the incompetent’s estate liable. While at the Hudson River State Hospital he was entitled to, and presumably received, the same care, maintenance and treatment as any patient not *532 under indictment; he suffered similar restraint; he could leave only to stand trial, if competent to do so, or to enter a jail to await trial or to be released upon bail to await trial if the offense were bailable. The patient committed to the State hospital, but not under indictment, ordinarily could leave only if recovered or placed upon a convalescent status or released to the care of some other person or some other institution or, perhaps, upon a writ of habeas corpus. In either case the patietit may not leave of his own volition.
Concededly the patient not under indictment, his committee, spouse, parents and children, must pay for his care if of sufficient ability, as provided in section 24 of the Mental Hygiene Law. By what logic should the patient under indictment and being cared for in a civil State hospital be rewarded by giving him preferential treatment and making no charge for his care? Such discrimination hardly appears just or fair when the law-abiding citizen who unfortunately suffers a mental illness must pay for his care. To hold, as an alternative, that inasmuch as the county is not liable, the State must continue to bear the cost of the incompetent’s care after the transfer, places an unwarranted burden upon the taxpayers of the State.
The motion to settle the final account of the committee is granted and the account settled and allowed as filed. The claim of the Department of Mental Hygiene is allowed as presented. The attorneys for the committee shall submit an affidavit as to the legal services rendered by them herein.
Settle order on notice with provision therein for the insertion by the court of the fees of the special guardian and of the attorneys for the committee.